UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHNNY CORRALEZ,<br><br>             Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>             Defendant. | Case No. CV 10-06272-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

### PROCEEDINGS

On August 27, 2010, Johnny Corralez ("Plaintiff" or "Claimant" or "Corralez") filed a complaint seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits. The Commissioner filed an Answer on February 23, 2011. On May 2, 2011, the parties filed a Joint Stipulation ("JS"). The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and the case dismissed with prejudice.

## BACKGROUND

Plaintiff is a 47 year old male who alleges disability due to spinal injury, degenerative bone disease, and hypertension beginning September 7, 2008. (AR 8, 10, 122.) Plaintiff's claim was denied initially on December 1, 2008. (AR 8.) Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Robert A. Eisman on July 21, 2009, in Downey, California. (AR 8.) Claimant appeared and testified. (AR 8.) Frank Thomas Corso, Jr., a vocational expert ("VE") also testified. (AR 8.) Claimant was represented by counsel. (AR 8.)

The ALJ issued an unfavorable decision on August 18, 2009. (AR 8-15.) The Appeals Council denied review on July 23, 2010. (AR 1-3.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises only one disputed issue as a ground for reversal and remand:

1. Whether the ALJ properly analyzed and determined that Plaintiff's impairments did not meet or medically equal Listing of Impairment 1.04.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla' . . . but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotations and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual

functional capacity ("RFC").[1]  20 C.F.R. § 416.920(e).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

## THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since October 21, 2008, the application filing date.  (AR 10.)

At step two, the ALJ found that Claimant has the following combination of medically determinable severe impairments: degenerative disc disease of the lumbar spine, status post back surgery with residual chronic pain, and hypertension.  (AR 10.)

---

[1]  Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

4

As step three, the ALJ determined that Corralez does not have an impairment or combination of impairments that meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1. (AR 10.)

The ALJ then found that Plaintiff had the residual functional capacity to perform sedentary work with limitations:

> . . . the claimant is limited to occasional ramp and stair climbing, kneeling and crawling, he is unable to climb ladders, ropes and scaffolds, he is unable to stoop or crouch, he must use a handheld device for prolonged ambulation lasting 30 minutes or more, and he must avoid concentrated exposure to extreme vibration.

(AR 10.)

In determining Plaintiff's RFC, the ALJ also made an adverse credibility finding to the extent Plaintiff alleged subjective symptoms that would preclude sedentary work. (AR 13.) Plaintiff does not challenge the adverse credibility finding here.

At step four, the ALJ determined that Plaintiff has no past relevant work. (AR 14.) Nonetheless, the ALJ found that there are jobs in the national economy in significant numbers that Claimant can perform, including local ticket checker, final assembler, and local order clerk. (AR 14-15.)

Hence, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 15.)

**DISCUSSION**

Plaintiff's sole contention is that the ALJ failed to explain his finding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. There was no error here. Plaintiff had the burden of proof at step three on whether his impairments met or equaled a listed impairment. Plaintiff, however, never presented any argument to the ALJ that his back impairments met or equaled Listing 1.04. Nor did he present any medical opinion evidence

that say Listing 1.04 was met or equaled. Nor does the medical evidence of record so indicate. The ALJ fully discussed all the relevant evidence before concluding that Plaintiff was not disabled. Substantial evidence supports the ALJ's decision which is free of legal error.

**A.    Relevant Law**

Social Security regulations provide that a claimant is disabled if he or she meets or medically equals a listed impairment. Section 416.920(a)(4)(iii) ("If you have an impairment that meets or equals one of listings . . . we will find that you are disabled"); Section 416.920(d) ("If you have an impairment(s) which . . . is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience"). In other words, if a claimant meets or equals a listing, he or she will be found disabled at this step "without further inquiry." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). There is no need for the ALJ to complete steps four and five of the sequential process. Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

The listings in Appendix 1 describe specific impairments considered "severe enough to prevent an individual from doing gainful activity, regardless of his or her age, education, or work experience." Section 404.1525. An impairment that meets a listing must satisfy all the medical criteria required for that listing. Section 404.1525(c)(3). An impairment cannot meet a listing based only on a diagnosis. Section 404.1525(d).

Medical equivalence will be found if the impairment "is at least equal in severity and duration to the criteria of any listed impairment." (Section 404.1526(a). Medical equivalence is based on symptoms, signs and laboratory findings, but not subjective symptoms. Section 404.1529(d)(3).

Plaintiff alleges that he meets or equals Listing 1.04 for disorders of the spine. Listing 1.04 provides as follows:

> 1.04. *Disorders of the spine* (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

>disease, facet arthritis, vertebral fracture), resulting in compromise of a
>nerve root (including the cauda equina) or the spinal cord.  With:
>
>>A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weaknesses) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>>
>>B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>>
>>C. Lumbar spine stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

**B.   Analysis**

Plaintiff is seeking to be found disabled at step three of the sequential process based on Listing 1.04.  The ALJ made this finding at step three:

>The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

(AR 10.)  There is no elaboration of the medical evidence or reasons for this conclusion at this point in the ALJ decision.  At step four when considering Plaintiff's RFC, however, the ALJ discusses all of the relevant medical evidence of record in finding Corralez can perform sedentary work with limitations.  (AR 10-14.)

1    Plaintiff asserts error because the ALJ's decision is "devoid of an analysis" at step

2    three.  (JS 3.)  To be sure, "[a]n ALJ must evaluate the relevant evidence before concluding

3    that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding

4    is insufficient to support a conclusion that a claimant's impairment does not do so."  Lewis,

5    236 F.3d at 512, citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

6    Lewis presented similar facts.  The ALJ found that the claimant's impairments did not

7    meet or equal a listing but provided no elaboration on that determination at step three.  Id.

8    Lewis, however, did not find error because elsewhere in the decision the ALJ discussed that

9    Lewis' epileptic seizures were largely a result of medication compliance and well controlled

10   when he took his medication, and thus would not meet or equal a listing.  Id. at 513.  Lewis

11   held that Marcia "simply requires an ALJ to discuss and evaluate the evidence that supports

12   his or her conclusions; it does not specify that the ALJ must do so under the heading

13   'Findings.'"  Id.  Other cases in the Ninth Circuit have held similarly.  See, e.g., Kruchek v.

14   Barnhart, 125 Fed. Appx. 825, 827 (9th Cir. 2005) (adequately analyzed evidence elsewhere

15   in decision): Harris v. Astrue, 2009 WL 801347 *7 (N.D. Cal. 2009) (discussion and

16   evaluation of evidence at step four supported ALJ's step three conclusion that impairments

17   did not equal listing 1.04; "Lewis does not require that support for the ALJ's conclusions be

18   placed in a specific section of the report").  The ALJ's findings in this case regarding

19   Plaintiff's RFC (AR 10-14) leave no doubt that Plaintiff does not meet or equal a listed

20   impairment, as more fully discussed below.

21   Plaintiff has the burden of proof at step three.  Parra, 481 F.3d at 746.  Plaintiff did not

22   make any argument at the ALJ hearing that he met or equaled a listing.  Plaintiff did not

23   present any medical opinions that say he met or equaled a listing.  In Burch v. Barnhart, 400

24   F.3d 676, 683 (9th Cir. 2005), the Ninth Circuit, citing Lewis, held, "An ALJ is not required to

25   discuss the combined effects of a claimant's impairments or compare them to any listing in

26   an equivalency determination, unless the claimant presents evidence in an effort to establish

27   equivalence."  Nonetheless, Plaintiff contends that the medical evidence of record indicates

28

medical equivalence with Listing 1.04. The Court finds, however, that as in Lewis, 236 F.3d at 514, Plaintiff has not demonstrated that the medical evidence of record establishes combined impairments that meet or equal a listed impairment.

The ALJ found Plaintiff had the severe impairment of degenerative disc disease. To meet Listing 1.04A, there must be "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test."

Plaintiff references a July 26, 2008, MRI taken at Doctors Hospital of Manteca showing left-sided disc bulging at L 3-4, which was seen "abutting the left exiting nerve root." (AR 227.) This same MRI revealed "L 4-5 disc dessication with lateral disc bulges extending into the anterior, inferior aspect of bilateral neural foramen." (AR 227.) A July 25, 2008, CT scan at Doctors Hospital showed mild to moderate degenerative spondylosis. (AR 224.)

Plaintiff did not allege at the hearing that this evidence met or equaled Listing 1.04A nor did any physician ever say that it did. As the Commissioner observes, none of these medical findings show evidence of nerve root compression accompanied by sensory or nerve loss. The July 26, 2008, MRI indicated a disc bulge that abutted but did not compress the nerve root. (AR 227.) More importantly, the ALJ discussed all the above evidence cited by Plaintiff, noting that the MRI and CT scan predated an August 7, 2008, back surgery (foraminotomy) with significant post-surgery improvement and effective pain management. (AR 12, 13.) The ALJ presented the following evidence of post-surgical improvement:

> Subsequent records from Sacred Heart Family Medical Clinic (hereinafter "Sacred Heart") reflect continued complaints of back pain as well as some radiculopathy complaints (Exhibit 10F). However, aside from some clinical findings of back related spasm and tenderness, clinical examinations show no objective evidence of any disturbance of gait or station or neurological deficits. Nevertheless, treating sources prescribed

>           Oxycontin for the claimant's back pain on December 5, 2008 (Exhibit
>           10F/12).  By December 10, 2008 treatment records reflect significant
>           improvement of the claimant's back pain and decreased lumbar
>           tenderness with the use of medication (Exhibit 10F/11).  A January 21,
>           2009 visit note reflects improved pain relief, while a February 18, 2009
>           reflects that the claimant was doing well (Exhibit 10F/8, 9).  An April 9,
>           2009 note reflects that the claimant's's back pain was rated a 2/10 in
>           severity with the use of Oxycontin as well as Ibuprofen (Exhibit 10F/5).
>           The latest treatment note, dated July 8, 2009, reflects largely
>           unremarkable examinations findings.  Aside from some subjective
>           tenderness at the back, straight leg raising was negative bilaterally, there
>           was no evidence of related muscle spasm and there were no other
>           abnormal findings such as neurological deficits, impaired ambulation, or
>           markedly restricted back range of motion (Exhibit 10F/2).
>           Although Sacred Hart records do reflect that the claimant was
>           referred for pain management treatment, their records reflect generally
>           effective pain management with Oxycontin and Ibuprofen with no
>           reported side effects (Exhibit 10F).

(AR 12.)  Plaintiff acknowledges the August 8, 2008, surgery but not the post-surgical improvement evidence cited above.

Plaintiff also refers to an "inability to ambulate" (AR 261) and a recommendation for surgery (AR 266) but again this evidence predated the August 8, 2008, surgery.  The ALJ noted that Manteca discharge records reflect improved ambulation.  (AR 260.)  The ALJ also noted that subsequent Sacred Heart treatment notes from July 8, 2009, indicate no impaired ambulation (AR 12, 13, 246) or need for continued use of a cane.  (AR 13.)

Listing 104C requires "Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging . . . and resulting in inability to ambulate effectively as, defined in 1.00B2b."  Section 1.00B2b states that "inability

to ambulate effectively means an <u>extreme</u> limitation of the ability to walk." (Emphasis added.) No doctor diagnosed pseudoclaudication or determined that Plaintiff was severely limited in his ability to walk, following the August 8, 2008, surgery.

Plaintiff cites the November 6, 2008, report of consulting examiner Dr. John Sedgh who observed that Plaintiff had decreased range of motion to the lumber spine and a positive straight leg raising test in the seated position and would need a cane for prolonged walking. (AR 194-95.) Dr. Sedgh, however, concluded that Plaintiff retained the physical capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, and stand and walk two hours within an 8 hour workday and sit for six hours. (AR 195.) Dr. Sedgh obviously did not believe Plaintiff is unable to work.

The ALJ thoroughly discussed Dr. Sedgh's report and relied on it:

> Within a November 6, 2008 consultative examination report, Dr. John Sedgh reported some abnormal findings (Exhibit 3F). However, the Administrative Law Judge notes that his examination was roughly only 3 months following the claimant's surgery. Given the recency of surgery, Dr. Sedgh's report indicates remarkable improvement of the claimant's overall back condition. Despite the claimant's complaints of acute back pain, radiographic testing of the lumbar spine showed only mild degenerative disc disease (Exhibit 3F/5). His clinical examination showed some abnormal findings such as limited range of motion at the back. Positive straight leg raising in the seated position bilaterally, and a slightly to moderate antalgic gait, which is not remarkable given the claimant's recent surgery. However, the neurological examination was completely unremarkable and showed no evidence of any neurological compromise affecting the lower extremities. Additionally, an examination of the lower extremities was completely normal and showed no evidence of any restricted range of motion. Further, there was no evidence of any muscle spasm or tenderness affecting the back (Exhibit 3F/3). Related to

claimant's hypertension, Dr. Sedgh did report an elevated blood pressure
reading of 162/92.  However, he found no evidence of stroke or
congestive heart failure.  Although the claimant has a history of hepatitis
C, Dr. Sedgh reported a normal abdominal examination and no evidence
of hepatomegaly or splenomegaly (Exhibit 3F/5).

(AR 12.)

Nor is there any evidence of Listing 1.04B, which requires evidence of spinal arachnoiditis confirmed by an operative note or pathology report of tissue biopsy or medically acceptable imaging.  No doctor ever made such a diagnosis.  Thus, Plaintiff has not presented evidence that his impairments meet or equal any of the 1.04 Listings.

Considering all of the above evidence, the ALJ reached the following conclusions about Plaintiff's physical limitations:

Based on a review of the overall evidence, the Administrative Law Judge
is persuaded that the record reflects significant improvement of the
claimant's back condition since his August 2008 back surgery.  Most
notably, subsequent records, including a consultative examination dated
only 3 months following surgery, reflect an absence of any neurological
examination deficits affecting the extremities.  Additionally, they show
significant control of the claimant's back pain symptoms with the use of
Oxycontin and other medications, without any documented side effects.
Recent Sacred Heart records also fail to show findings supporting the
continued use of a cane for prolonged ambulation or a recent medical
prescription for its continued use.  Nevertheless, given the claimant's
significant treatment history and the continued, but greatly improved, back
related complaints and findings reflected within Sacred Heart records, the
Administrative Law Judge gives the claimant the significant benefit of the
doubt and finds that he is limited to sedentary work based on Dr. Sedgh's
exertional limitations.  Sedentary work is defined by the ability to exert up

| | |
|---|---|
| 1 | to 10 pounds of force occasionally and/or exert a negligible amount of |
| 2 | force frequently to move objects including the human body.  Additionally, |
| 3 | sedentary work involves sitting most of the time but may involve walking |
| 4 | and standing for brief periods of time.  Jobs are also sedentary if walking |
| 5 | and standing are required only occasionally and all other sedentary |
| 6 | criteria are met.  The Administrative Law Judge notes that the claimant's |
| 7 | back condition would also reasonably preclude stooping, crouching, |
| 8 | ladder, rope and scaffold climbing and concentrated exposure to extreme |
| 9 | vibration.  However, the claimant would be capable of occasional |
| 10 | kneeling, crawling and ramp or stair climbing.  Further, consistent with Dr. |
| 11 | Sedgh's assessment, the Administrative Law Judge finds that the |
| 12 | claimant would require a hand held assistive device for prolonged |
| 13 | ambulation lasting 30 minutes or longer.  No other limitations are |
| 14 | supported by the record. |

(AR 13.)  The ALJ plainly discussed the combined effects of Plaintiff's impairments in determining Plaintiff's RFC and concluding that Plaintiff was not disabled.  Plaintiff does not challenge the ALJ's RFC or step five determination or explain how a claimant with a functional capacity assessment that would permit work could be found disabled at step three.

Plaintiff's assertion that the ALJ failed to elaborate on his step three finding has no merit.  The ALJ thoroughly discussed all of the relevant medical evidence of record bearing on Listing 1.04 elsewhere in the decision.  (AR 10-14.)  None of that evidence establishes any impairments or combination of impairments that meet or equal the 1.04 Listings.  The ALJ provided reasons supported by substantial evidence why Plaintiff is not disabled.

///

///

///

///

**ORDER**

IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing the case with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 12, 2011

 */s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE